TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00142-CV






Harold L. Piatt, Jr., Appellant



v.



Lisa Mae Schultz and Office of the Attorney General of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-02990, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING 







 Harold L. Piatt, Jr. appeals the trial court's refusal to terminate his paternal relationship with
his child by Lisa Mae Schultz. By six points of error he challenges the constitutionality of a statute and
asserts the trial court erred by admitting certain evidence, excluding other evidence, and talking with a juror
after submitting the case to the jury. We will affirm the judgment.


BACKGROUND


 Piatt and Schultz began dating in August 1992. At some point, Piatt explained clearly to
Schultz that he did not want any more children than he already had. In December 1992, Schultz aborted
a pregnancy by another man. In January 1993, Piatt and Schultz began having sex. Schultz assured him
she was taking oral contraceptives. She stopped taking the pills; the parties dispute whether she informed
Piatt before or after she stopped. Schultz became pregnant by Piatt in April 1993 and gave birth in January
1994.

 In March 1994 the attorney general filed a petition to establish a parent-child relationship
between Piatt and the child. In July 1994, the court entered a temporary agreed order establishing the
parent-child relationship. In August 1994, Piatt filed a petition to terminate the relationship; Schultz, the
attorney ad litem for the child, and the attorney general opposed his petition. Piatt contended that the child
would be better off if his rights were terminated because of his rage at Schultz's deception.

 The jury concluded that the child's best interest would be served by maintaining the parent-child relationship. The court thereafter ordered him to pay child support.


DISCUSSION


 Piatt appeals the judgment without directly attacking the jury's finding. He contends that
the jury received evidence improperly when the court introduced the child at voir dire. He contends the
jury was erroneously denied evidence when the court excluded evidence of Schultz's abortions and
subsequent lies about them under oath. He complains that the court improperly spoke with a juror in
chambers after the case had been submitted to the jury. He argues finally that he should be treated like an
anonymous sperm donor, who by statute has no parental rights, rather than as a father.

 During our review we must bear in mind that the sole issue at trial was whether termination
of the paternal relationship was in the best interest of the child. See Tex. Fam. Code Ann. § 161.005
(West 1996). We can reverse the judgment only if an error probably caused the rendition of an improper
judgment. See Tex. R. App. P. 44.1(a)(1). 

 The first four points of error concern the admission and exclusion of evidence. We will
review the court's decisions for an abuse of discretion. See Syndex Corp. v. Dean, 820 S.W.2d 869, 873
(Tex. App.--Austin 1991, writ denied). The test is whether the court acted without reference to any
guiding rules and principles--that is, acted arbitrarily or unreasonably. Id. at 873-74.

 By his first two points of error, Piatt challenges the court's introduction of the child to the
prospective jurors. The court overruled his motion in limine to keep the child out of the presence of the
jury and inadvertently introduced her as "the child of this marriage." Piatt asserts that the child was too
young to understand an oath and testify, but that her appearance served as testimony about her existence,
physical appearance, and innocence.

 Piatt's arguments are not persuasive. Because the child's existence was not disputed and
her physical appearance was not an issue, her introduction to the jury did not cause unfair prejudice on
either issue. Nor was showing the child's "innocence" unfairly prejudicial. The child clearly could not have
been "guilty" of deception involved in her own conception. Any sympathy engendered among the jurors
by the child's "innocence" is not improper because jurors must consider her best interest under Family
Code section 161.005. Her innocence might have worked in favor of Piatt's case by prompting jurors to
want to protect her from a father enraged by her existence. Any confusion caused by the court's
misstatement that the child was of a marriage was overcome by the uncontradicted evidence that the couple
were not married; furthermore, appellant failed to object to the misstatement at the time in order to allow
the court to correct any misimpression. We find no harmful error and overrule points one and two.

 By his third and fourth points of error, Piatt contends the court should have allowed him
to present evidence about Schultz's abortions. A trial court may exclude relevant evidence if the probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury. Tex. R. Evid. 403. Piatt argues he wanted to use the evidence to show that she deliberately
became pregnant with his child and that she lied about the abortions under oath during depositions. He
contends this evidence would have shown justification for the rage at Schultz that he contends prevents him
from having a healthy relationship with their child.

 We conclude that the trial court did not abuse its discretion by admitting the relevant
essence of the evidence while excluding irrelevant or unfairly prejudicial parts of the evidence. We first note
that evidence of the three abortions performed before Piatt and Schultz met are irrelevant to his claim that
she connived to have his child. Recognizing that abortion is highly controversial and could therefore unfairly
prejudice some jurors, the trial court prohibited evidence of Schultz's fourth abortion in December 1992. 
The court admitted evidence that she had a "vaginal procedure" that enabled her to become pregnant with
Piatt's child. This limitation of evidence allowed Piatt to develop his theory that Schultz actively sought to
become pregnant with his child in defiance of his clearly stated wishes, but averted unfair distraction by the
inflammatory issue of abortion; the vagueness of the "procedure" shows that her methods included seeking
medical attention regardless of whether jurors mistakenly thought she had some sort of fertility treatment
or correctly guessed she had an abortion. We do not find an abuse of discretion in the court's balance of
probative value and unfair prejudice. We overrule point three.

 Again recognizing the potential prejudice from the mention of abortion, the court admitted
evidence that Schultz lied in deposition, but excluded the fact that she lied during depositions about having
abortions. That she lied under oath is relevant to Piatt's claim that Schultz is deceptive, which is relevant
to his claim that her lies to him enraged him, which is somewhat relevant to whether terminating his paternal
rights was in the child's best interest. That she lied about having had abortions could have been highly and
unfairly prejudicial and would have had minimal, if any, relevance to what is in the child's best interest. The
court admitted the relevant aspect of her deceptive nature without admitting the distracting red herring of
her history of abortions. We find no abuse of discretion in the court's balance of probative value and unfair
prejudice. We overrule point four.

 By point of error five, Piatt complains that the court improperly conversed with a juror after
submitting the case to the jury. There is no record of the conversation, nor is there any proof of what the
conversation entailed. Piatt asserts in his brief that, when the juror approached the judge with a concern,
the judge called the juror and the parties' counsel into chambers. Piatt asserts that the juror said he was
confused over what the jury could consider. The next morning the court called the jury into the courtroom
and reiterated the scope and nature of the jury's role.

 We find no reversible error. The failure to make any sort of record of the substance of the
conversation leaves us nothing to review. Piatt does not allege that he complained to the trial court about
this procedure, much less make a record reference. See Tex. R. App. P. 33.1(a), & 38.1(h). Even if we
reviewed his allegations, Piatt has not demonstrated that any of this conversation probably caused the
rendition of an improper judgment or prevented him from properly presenting the case to us. We know
of no rule that this type of conversation in chambers with the parties' attorneys present is fundamental or
per se reversible error. We overrule point five.

 By point of error six, Piatt seeks to be treated like a sperm donor. State law provides that
a child resulting from artificial insemination is not deemed to be the sperm donor's child unless the donor
is the mother's husband. Tex. Fam. Code Ann. § 151.101(b) (West 1996). Piatt contends that Schultz's
actions--aborting the other man's baby, stopping her birth-control pills--mimic the actions of women
seeking to become pregnant through artificial insemination. He contends that the only difference between
him and the sperm donor contemplated by the Family Code is that he gave his sperm through "non artificial"
insemination. He argues that treating him differently from artificial-insemination donors violates his right to
equality under the law guaranteed by Texas Constitution Article 1, section 3a.

 His constitutional claim is meritless. Section 3a protects against unequal treatment based
on sex, race, color, creed, and national origin. Texas Const. art. I, § 3a. In this context, "sex" means
gender, not whether one had sexual intercourse. Piatt does not assert that he has been discriminated
against based on any of these protected categories. The provision does not prevent treating men differently
depending on how their sperm fertilizes an egg. The general rule is that fathers may be ordered to support
the children created in part by their sperm. See Tex. Fam. Code Ann. § 154.001 (West 1996). 
Recognizing that many women cannot conceive a child with their partners and must rely on donor sperm,
the Legislature carved out a small exception to the general rule with section 151.101(b). The exception
facilitates artificial insemination by removing the specter of parental rights/responsibilities claims by or
against the non-husband sperm donor. Piatt has not shown any way that he was treated irrationally
differently based on his membership in a constitutionally protected class. We overrule point six.


CONCLUSION


 Though we deplore any deception involved in the child's conception, our focus--and her
parents' focus--must be on the child's best interest. Our society has decided that, until a child can provide
for herself, those responsible for her conception may be required to provide for her needs. Piatt has not
shown how any of the assigned errors unfairly hindered his quest to prove that his child's best interest
would be served by having no relationship with or support from her father.

 We affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice 

Before Chief Justice Yeakel, Justices Jones and Kidd

Affirmed

Filed: August 13, 1998

Do Not Publish



att's claim that Schultz is deceptive, which is relevant
to his claim that her lies to him enraged him, which is somewhat relevant to whether terminating his paternal
rights was in the child's best interest. That she lied about having had abortions could have been highly and
unfairly prejudicial and would have had minimal, if any, relevance to what is in the child's best interest. The
court admitted the relevant aspect of her deceptive nature without admitting the distracting red herring of
her history of abortions. We find no abuse of discretion in the court's balance of probative value and unfair
prejudice. We overrule point four.

 By point of error five, Piatt complains that the court improperly conversed with a juror after
submitting the case to the jury. There is no record of the conversation, nor is there any proof of what the
conversation entailed. Piatt asserts in his brief that, when the juror approached the judge with a concern,
the judge called the juror and the parties' counsel into chambers. Piatt asserts that the juror said he was
confused over what the jury could consider. The next morning the court called the jury into the courtroom
and reiterated the scope and nature of the jury's role.

 We find no reversible error. The failure to make any sort of record of the substance of the
conversation leaves us nothing to review. Piatt does not allege that he complained to the trial court about
this procedure, much less make a record reference. See Tex. R. App. P. 33.1(a), & 38.1(h). Even if we
reviewed his allegations, Piatt has not demonstrated that any of this conver